645 A.2d 274

**COMMONWEALTH of Pennsylvania,**

v.

**Grady BISHOP, Appellant.**

Superior Court of Pennsylvania.

Submitted June 20, 1994.

Filed July 27, 1994.

Grady Bishop, appellant, pro se.

Ramy I. Djerassi, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before JOHNSON, FORD ELLIOTT, and HESTER, JJ.

HESTER, Judge:

Grady Bishop appeals from the order entered in the Court of Common Pleas of Philadelphia County on December 23, 1992, which denied him relief under the now-superseded Post–Conviction Hearing Act (PCHA).[1] Asserting that the appeal is frivolous, appellate counsel requests permission to withdraw. For the reasons set forth below, we grant counsel's request and affirm the order denying PCHA relief.

The facts may be summarized as follows. On the evening of January 24, 1977, appellant and Gerald Rawls forcibly entered a Philadelphia apartment and after ransacking it, stole a color television set. During the commission of this crime, Mr. Rawls beat Anderson Witcher, one of the apartment's elderly residents. Mr. Witcher later died as a result of that beating.

On March 2, 1977, five weeks after the incident, officers of the Philadelphia Police Department arrested appellant. He subsequently was charged with murder, burglary, robbery, conspiracy, and involuntary manslaughter. Appellant later moved to suppress all physical evidence, certain statements he made to the police, and an identification. On April 27, 1977, following an evidentiary hearing, the trial court refused to suppress either appellant's statements or the physical evidence. Appellant eventually abandoned his remaining suppression claim.

On July 18, 1977, appellant was convicted at a bench trial of second degree murder, burglary, robbery, and conspiracy, the only charges presented for resolution. Later, after appellant filed unsuccessful post-verdict motions, the trial court sen-

1. The caption incorrectly indicates that the present appeal was taken from an order relating to the Post Conviction Relief Act, which became effective on April 13, 1988, nine months after appellant initiated post-conviction proceedings.

tenced him to life imprisonment. On direct appeal, we affirmed the judgment of sentence.[2] *Commonwealth v. Bishop*, 271 Pa.Super. 100, 412 A.2d 594 (1979).

On July 1, 1987, nearly ten years after his conviction, appellant filed a *pro se* petition for relief under the PCHA. Following the appointment of counsel, appellant filed an amended post-conviction petition in which he asserted several claims of ineffective assistance. Specifically, appellant averred that defense counsel coerced him into waiving his right to a jury trial, failed to ascertain his competency, and neglected to seek the suppression of both an identification and an inculpatory statement. Appellant also challenged counsel's failure to present a witness identified only as "Mr. Green." *See* Appellant's amended petition at 3. Later, pursuant to a court order, appellant set forth the basis of his claims with more specificity.

On April 16, 1991, the PCHA court apparently determined that only appellant's claim regarding Mr. Green possessed arguable merit. Accordingly, the court limited evidentiary hearings to that issue. Several months thereafter, PCHA counsel informed the court that he had been unable to locate Mr. Green. Consequently, the court entered the contested order. This timely appeal followed.[3]

▪ Preliminarily, we note that it long has been clear that counsel for a criminal defendant may withdraw at any stage of collateral proceedings if he, in the exercise of his professional judgment, determines that the issues raised in those proceedings are meritless and the post-conviction court concurs with his assessment. *See Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988). The post-conviction petitioner then may proceed *pro se*, by privately retained counsel, or not at all. *Id.* Before a request to withdraw may be granted, counsel must file a "no-merit" letter detailing the nature and extent of his review and listing each issue which the petitioner

**2.** We note that appellant's trial counsel also represented him on appeal.

**3.** During the pendency of this appeal, the court permitted PCHA counsel to withdraw and appointed present counsel.

wished to raise. *Id.* In addition, the letter must include an explanation as to why those issues lack merit. *Id.* Finally, we note that there must be an independent judicial determination that the various issues support no grant of relief. *Id.*

■ In the present case, erroneously relying upon the stringent standard applicable to the withdrawal of counsel on direct appeal, *see Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), present counsel has filed a brief and a petition to withdraw. However, our review of those documents reveals that counsel substantially has complied with the requirements of the no-merit letter. Specifically, we note that counsel indicates in his petition that he examined both the record and the law relating to potential issues in the case. In addition, our examination of the brief filed by counsel indicates that it sets forth four of the claims contained in the amended PCHA petition and after discussing both the record and applicable law, indicates that those claims are devoid of merit. Accordingly, in order to determine the propriety of the withdrawal request, we must independently review the record and determine whether appellant raises any claims which entitle him to relief.

Appellant raises several challenges to the effectiveness of defense counsel. Our standard for reviewing the propriety of those challenges is well-established.

> Claims of ineffectiveness of counsel are subject to a three-part analysis:

> First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client.... The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. [Citations omitted.]

*Commonwealth v. Nelson,* 389 Pa.Super. 417, 420, 567 A.2d 673, 676 (1989). To prove prejudice from the ineffective-

ness, Appellant must show that counsel's errors had an adverse effect on the outcome of the trial. *Commonwealth v. Boyles,* 407 Pa. [Pa.Super.] 343, 358, 595 A.2d 1180, 1188 (1991), *alloc. den.,* 531 Pa. 651, 613 A.2d 556 (1992). "An appellant must show that the error was 'so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable.'" *Boyles,* 407 Pa.Super. 358, 595 A.2d at 1188 (quoting *Commonwealth v. Morocco,* 375 Pa.Super. 367, 371, 544 A.2d 965, 967 (1988), *alloc. den.,* 520 Pa. 615, 554 A.2d 508 (1989)). Furthermore, trial counsel cannot be found to have rendered ineffective assistance of counsel for failing to pursue a course of action that had no arguable merit. *Commonwealth v. [Black] Block,* 398 Pa.Super. 364, 365, 580 A.2d 1391, 1392 (1990), *alloc. den.,* 527 Pa. 628, 592 A.2d 1296 (1991).

*Commonwealth v. Roberts,* 428 Pa.Super. 156, 159–60, 630 A.2d 869, 870–71 (1993). Accordingly, we consider the merits of appellant's claims.

Appellant initially asserts that trial counsel ineffectively failed to seek the suppression of statements made by appellant. However, as appellant recognizes, *see* appellant's brief at 7, and our review of the record demonstrates, trial counsel did file an unsuccessful motion to suppress appellant's statements. Thus, appellant's assertion of ineffectiveness must fail.

■ Next, appellant asserts that trial counsel ineffectively failed to ascertain his competence prior to trial. However, we have thoroughly examined the record and find that it contains no evidence of impairment due to mental illness, drugs, or other cause. Indeed, our review of the record reveals that when appellant waived his right to a jury trial, he admitted that he had never been committed to a mental institution, that he understood the significance of waiving his right to jury trial, and that his understanding was not affected by medication which he was taking for epilepsy. Notes of Testimony ("N.T."), 7/13/77, at 5–12. Moreover, we note that appellant testified at trial. N.T., 7/15/77, at 159–76. At no time during his testimony did appellant demonstrate a lack of comprehen-

sion sufficient to demonstrate incompetence. Accordingly, we find that appellant is entitled to no relief.

■ Appellant also asserts that trial counsel ineffectively coerced him to waive his right to a jury trial. This assertion is contradicted by testimony elicited from appellant during his waiver colloquy. N.T., 7/13/77, at 9. Specifically, appellant testified that his jury trial waiver was not the product of threats, coercion, or promises. *Id.* As appellant's claim is unsupported by the record, it must fail. Moreover, we note it is clear that appellant may not obtain post-conviction relief by claiming that he lied during his waiver colloquy. *See Commonwealth v. Cappeli,* 340 Pa.Super. 9, 489 A.2d 813 (1985) (relating to allegation of coerced guilty plea); *see also Commonwealth v. Jones,* 408 Pa.Super. 337, 596 A.2d 885 (1991) (same).

Finally, appellant asserts that trial counsel ineffectively failed to pursue his motion to suppress an identification. In support of this assertion, which apparently relates to the in-court identification made by Parker Harris, appellant implies that the identification was unreliable. In addition, he avers that counsel abandoned the matter after the parties agreed that it would be decided on the basis of the evidence presented at trial.

In *McElrath v. Commonwealth,* 405 Pa.Super. 431, 437, 592 A.2d 740, 742–43 (1991) (citations omitted), we considered the propriety of an identification and stated:

In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. *Commonwealth v. Sample,* 321 Pa.Super. 457, 461, 468 A.2d 799, 801 (1983), *citing Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Commonwealth v. Sutton,* 496 Pa. 91, 436 A.2d 167 (1981). Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. *Id.* 321 Pa.Super. at 461–62, 468 A.2d at 801. As the *Sample* court explained, the

following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Id.*, 321 Pa.Superior Ct. at 462, 468 A.2d at 801. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Id.*

At trial, Mr. Harris, a resident of the building in which the murder occurred, testified that he saw two young men on the night of the murder, one in the Witcher apartment and one in the nearby hallway. Mr. Harris indicated that both men were armed and that he conversed with the latter man, whom he identified as appellant. Mr. Harris also stated that the door to the Witcher apartment had been kicked in, that he heard the victim request assistance, and that he later saw appellant carry a television set from the building. Finally, Mr. Harris stated that he had observed appellant for approximately twenty to twenty-five minutes on the night in question.

▪ From Mr. Harris's testimony, it is clear that he had ample opportunity to observe appellant both during and immediately after the commission of the crime. Due to the circumstances surrounding his conversation with appellant, Mr. Harris unquestionably was attentive when observing him. Moreover, we note that Mr. Harris exhibited no uncertainty in his identification of appellant. Accordingly, we find that the record demonstrates that Mr. Parker's identification was reliable under the totality of the circumstances. Since counsel may not be considered ineffective for failing to perform meritless tasks, *see Commonwealth v. Roberts, supra,* we conclude that defense counsel may not be faulted for abandoning the contested suppression claim. We also note that the PCHA court properly refused to consider the merits of appellant's claims, which, as we have demonstrated, are unsubstantiated by the record. It is clear that the PCHA court need not grant

a hearing on an issue if it is patently frivolous and without a trace of support in the record. *See* 42 Pa.C.S. § 9549(b).

The petition of counsel to withdraw is granted; order denying relief under the PCHA is affirmed.